## WOODBURY DAVIS, *Memorialist, ex parte.*

The Governor having, with the advice of the council, on the address of both branches of the Legislature, removed from office one of the Justices of this Court, it is the imperative duty of the Court, the question being presented by a proper and sufficient process, served upon parties adversely interested, not only to consider the proceedings preliminary to the address, and to decide whether they are valid or otherwise, but also to pass upon the question, whether the removal of such Justice by the Governor, was in conformity to the provisions of the constitution, and has the effect to disqualify him from exercising the duties of the office, and to deprive him of the right to receive the compensation established by law for such Justice.

The right, and the duty of this Court to consider and decide questions regularly presented at its bar, are inseparable.

The Executive has no power to give a practical interpretation to laws, in conflict with legal opinions properly given by the Judiciary. The Legislature are powerless in any attempt to legislate in violation of, or in a man-

Davis, *ex parte.*

ner inconsistent with constitutional restraints. And whenever, if ever, the executive or the legislative department exercises, in any respect, a power not conferred by the constitution, the judiciary, on a proper submission of the questions arising therefrom, is not only permitted, but compelled to sit in judgment upon such acts, and to pronounce them valid or otherwise.

When statutes have not interfered to change or modify the common law, the writs and processes, which have long been in use, for the purpose of obtaining redress, have been regarded as essential modes of remedy for alleged injuries. The writs of *certiorari, prohibition, mandamus* and *quo warranto,* and many other processes at common law, have undergone no material change; and when they are respectively the appropriate remedies for wrongful acts or neglects, all their peculiar characteristics must be retained.

In a suit brought in a common law court, a service upon a party adversely interested is essential. Without such service, in some mode recognized by law, the Court cannot proceed; and if, inadvertently, a judgment should be rendered without such service, it would be a nullity, and would be reversed on proper proceedings.

The Court has no jurisdiction in the case of a mere memorial, alleging that the acts of co-ordinate branches of the government are irregular, unlawful and unconstitutional, and praying the judgment of the Court thereupon, especially when no process connected with the memorial has been served upon any one adversely interested or otherwise, and no department of the government or officer thereof has appeared voluntarily and claimed to be heard.

MEMORIAL by one of the Justices of this Court, who had been removed from office by the Governor, with the advice of the council, on the address of both branches of the Legislature, alleging that the proceedings by which he had been removed were null and void, and praying that notice might be ordered to be given him at what term of the Court his services would be required.

The memorial was as follows:—

## "STATE OF MAINE.

" To the Justices of the Supreme Judicial Court, at the law term, in Portland, in the county of Cumberland, for the Western District, on the second Tuesday of May, 1856:—

" Woodbury Davis, heretofore, and still claiming to be, an Associate Justice of said Court, respectfully represents, that on the tenth day of October, 1855, and before that time, there were, according to the statute in such case provided, eight Justices of the Court aforesaid; and that on said day he was

duly appointed and commissioned by the Governor of this State, as a Justice of said Court, to fill a vacancy occurring therein on the twenty-third day of said October; and that on said twenty-third day of said October he duly took and subscribed the oaths required by the constitution of this State and the laws of the United States to qualify him to execute said trust, and thereafterwards entered upon the discharge of the duties of said office, and hath continued ever since that time to discharge the same : —

" And the said Woodbury Davis further represents that on the 19th day of March, 1856, the Senate of Maine, without any concurrent action on the part of the House of Representatives, adopted the following resolves, viz. : —

"STATE OF MAINE.

" In Senate, March 19th, 1856.

" *Resolved,* — That the Senate, after due notice given according to the constitution, will proceed to consider the adoption of an address to the Governor for the removal of Woodbury Davis, one of the Justices of the Supreme Judicial Court, for the causes following : —

" Because the said Woodbury Davis at the terms of the Supreme Judicial Court holden by him for the county of Cumberland, in the month of January last, and in the present month of March, has refused to recognize the official authority and privilege of Daniel C. Emery, who had before been duly appointed, commissioned and qualified, as the sheriff of said county, and then held that office : —

" Because the said Woodbury Davis, in his capacity of Judge, has assumed, without legal issue or judicial trial thereof, to deny the lawful and actual validity of the commission issued to the said sheriff, under the hand of the Governor and the seal of the State : —

" Because the said Woodbury Davis, not regarding the lawful and actual custody held by the said sheriff of prisoners confined in the jail of said county for trial at the present term of said Court, has undertaken to remove said prisoners

from jail, and has removed them by proceedings not warranted by law : —

" Because the said Woodbury Davis, at the times aforesaid, has recognized as the sheriff of said county another person who had before been lawfully removed from that office, and has undertaken to issue the orders and the precepts of the said Court to be executed by the person who has been so removed from office : —

" All of which acts and proceedings are and have been open and notorious, and are persisted in hitherto : —

" Because the continuance of such acts, proceedings and assumptions of the said Woodbury Davis tends to produce insubordination, confusion and violence ; is of dangerous and pernicious example ; confounds the distribution of the powers of government ; and tends to the subversion of the actual, constituted, and lawful authority of the State : —

" *Resolved,* — That these resolutions and statements of causes of removal be entered on the journal of the Senate ; and that a copy of the same be signed by the President of the Senate, and served upon the said Woodbury Davis by such person as the President of the Senate shall appoint for that purpose, who shall make return of such service upon his personal affidavit, without delay ; and that Friday, the 28th day of the present month, at nine o'clock in the forenoon, be assigned as the time when the said Woodbury Davis may be admitted to a hearing in his defence."

" And that on the same day, (the House of Representatives having taken no part in said proceedings, and not having any notice that any such proceedings were instituted,) a copy of the foregoing resolves was delivered to the undersigned by the Clerk of the Senate ; and that subsequently the Senate postponed the day for the hearing, to the fifth day of April next following.

" And the said Woodbury Davis further represents, that on the 31st day of March, aforesaid, Mark Shepard, a member of the Senate aforesaid, at the special request of the undersigned, offered in said Senate the following resolves, viz. : —

"*Resolved*,—That certain charges against Woodbury Davis, having been entered on the journal of the Senate, as causes why he ought to be removed from the office which he holds as one of the Justices of the Supreme Judicial Court, it is incumbent on the Senate, in the first instance, to establish the truth of such charges, by legal proofs:—

"*Resolved*,—That, for this purpose, there be appointed by the chair, a committee of three, with power to send for persons and papers, and take all necessary testimony relating to the case; and that said committee be instructed to summon such witnesses, at the request of said Woodbury Davis, as shall be essential to enable him to prove such facts as may be deemed by him necessary for his defence; and that said committee give the said Woodbury Davis due notice of the time and place of their meeting for the purposes aforesaid:"—

"That said resolves were referred by the Senate to a joint select committee, to report the order of proceedings for the hearing aforesaid; and that the two branches of the Legislature, upon the report of said committee, adopted the following rules for said hearing, (this being the first and only action on the part of the House of Representatives relating to this matter, previous to said hearing:)—

"1. The President of the Senate shall preside in the convention.

"2. The respondent may be heard by himself, and by counsel, if he shall so desire.

"3. Any affidavits or written statements may be read as a part of the defence, and only such testimony shall be admitted.

"4. No debate whatever shall be admitted in the convention.

"5. No motion shall be submitted or entertained, except to take a recess to a time certain, or to dissolve the convention; and every such motion shall be decided without debate."

"And the said Woodbury Davis further represents that on the fifth day of April, aforesaid, the members of the two branches of the Legislature having met in convention, and

notified him that they were ready for the hearing, he then appeared before them and presented the following protest, viz. : —

"And now the said Woodbury Davis appears and respectfully represents that this convention is not duly constituted under any provision of the constitution of this State, and that a hearing before this body is not such a hearing as he is entitled to by the said constitution : —

"*And further*, that the adoption of an address for his removal from office by the Governor and Council, for the causes aforesaid, is contrary to the provisions of said constitution :—

"*And further*, that said causes of removal have been stated and entered upon the journal of the Senate, and the day for a hearing assigned, and the notice thereof given to him by order of the Senate alone, without any concurrent action thereon on the part of the House of Representatives : —

"*And further*, that he has received no notice for any hearing before this convention, nor has this convention, nor have both branches of the Legislature agreed upon and stated the causes of removal aforesaid, upon which he is to be heard :—

"Wherefore, availing himself of the opportunity to be heard, which is now offered to him, he waives no objections to the proceedings aforesaid, but protests that they are not such as the constitution requires, and prays that this protest may be entered upon the journal of the Senate."

"And the said Woodbury Davis further represents, that after reading the foregoing protest, signed by him, and delivering the same to the President of the Senate, still reserving all the objections therein named, he read a written answer to the charges aforesaid against him, denying therein the truth of said charges ; and that thereupon he offered and presented a motion in writing, requesting therein that the evidence in support of said charges should then be introduced, that he might have notice thereof, and that he might be permitted to introduce and examine witnesses on oath in his defence ; that no evidence of any kind was then, or at any time during said hearing, produced to sustain said charges ; that on presenting

his motion aforesaid, he was informed by the president of the convention, that the rules aforesaid, adopted for said hearing, precluded the examination of witnesses, and that his request therefore could not be granted; and that the undersigned was admitted to no hearing in his defence, except by being permitted to read affidavits and written statements, and to present his views thereupon by himself and his counsel, before said convention.

"And the said Woodbury Davis further represents, that on the ninth day of April, aforesaid, without any further hearing, the House of Representatives having made no charges against him, nor stated any causes of his removal, the two branches of the Legislature adopted an address to the Governor for his removal from his office aforesaid, for the causes enumerated aforesaid in the resolves passed by the Senate on the 19th of March; and that, on the eleventh day of said April, the Governor of this State, with the advice of the Council, upon the address aforesaid, undertook to remove him from his said office; and that no one has been and no one can lawfully be appointed in his place.

"Whereupon the said Woodbury Davis, avering and believing that all the acts and proceedings aforesaid, on the part of the two branches of the Legislature, and of the Governor, are in violation of the provisions of the constitution of this State, and are therefore null and void, and that he has still a right to exercise the privileges and discharge the duties of his office aforesaid, now claims to act as an associate Justice of this Court; and he prays the judgment and opinion of this Court thereupon; and that this memorial may be entered on record, and that notice may be ordered to be given to him at what terms of Court his services will be required during the current year.

"Dated at Portland, May 13, 1856.

"WOODBURY DAVIS."

*W. P. Fessenden* appeared for the memorialist, and submitted an argument in writing, prepared by the latter; the points of which are as follows:—

I.—1. It is the right and duty of the Court, being composed of several associated members, before proceeding to the regular business of the term, *to determine its own constitution and membership.* Without the possession of this right, and the performance of this duty, the Court could neither know nor proclaim itself ready to attend to the business of suitors. The power to do this is necessary and indispensable in every Court sitting *in 'banc.*

" When the law granteth any thing to any one, that also is granted without which the thing itself cannot be." 12 Coke's R. 130.

" Whenever a power is given by statute, every thing necessary to the making of it effectual, or requisite to attain the end, is implied." 1 Kent's Com. 464.

" The general rule is well established, that when a general power is given, or duty enjoined, every particular power necessary for the enjoyment of the one, or the performance of the other, is given by implication." *Heard* v. *Pierce,* 8 Cush. 338.

2. The power to determine who are its members is as necessary, as indispensable for the transaction of business, as the power to punish for contempt of authority. The first is the more imperative, because, until it is done, nothing can be done.

" Courts, like legislative bodies, possess authority to punish for contempts in the transaction of the business entrusted to them." " It is considered an authority inherent in such bodies,—appurtenant and indispensable." *United States* v. *New Bedford Bridge,* 1 Woodbury & Minot, 401.

3. Usually courts take judicial notice of their own members. 1 Greenl. on Ev. 8. And where there is no cause for doubt, there is no necessity for inquiry. But where there is doubt, there must be examination of evidence; and when the question is settled, there must be a decision. A commission is only one kind of " evidence" of official authority. *Marbury* v. *Madison,* 1 Cranch, 137. It may be conclusive, or it may not. But whenever one brings into court a commission, as an

associate member of it, if there is any further doubt of his authority, he is entitled to have the question determined; and his associates have authority to decide it. Until that is done, the court is not properly organized. Standing in this position, I ask the judgment of this Court upon the validity of my commission.

4. Nor is it any objection that here are no pleadings and no issue. Questions of this nature, which come before the Court *ex parte,* or where the Court itself may, perhaps, be said to be a party, are always decided summarily, and without technical issue. Thus, for a contempt committed in the presence of the Court, judgment may be entered up at once, without arraignment, examination, pleading, or issue. See Thacher's Criminal Cases.

5. As no one can be appointed in my place, the question must, of necessity, be presented *ex parte.* There is no adverse party to be present, or to suffer by not being present.

The public have a right to a decision, not only for their own convenience, but because, if the proceedings against me are invalid, I shall be entitled to receive my salary, and I ought to perform the duties for which it is designed as a compensation.

And I ought to be informed if the duties which I have sworn to discharge are still incumbent upon me, for the reason given by Lord Mansfield for a speedy decision on an application for a writ of prohibition,—that I should not be " delayed in the exercise of a lawful jurisdiction." 1 Burrows, 198.

II.—1. The charges against me, on which my alleged removal was based, were all of them for *official acts,*—for " misdemeanor in office." The remedy provided by the constitution for this is by *impeachment.* Art. IX, § 5 ; Blount's impeachment, Wharton's State Trials, 291 ; Story's Com. on Const. § § 793, 794 ; Chase's impeachment, 237 ; Prescott's Impeachment ; 2 Wooddeson, § § 596, 612 ; 4 Bl. Com. 261.

2. The constitutional remedy for *official misconduct,* being a removal by " impeachment," *this excludes all other modes. Expressio unius est exclusio alterius.* This has long been an estab-

lished principle of interpretation. Smith's Stat. and Const. law, § 677; 1 Bishop's Cr. Law, § 150; *Dudley* v. *Mayhew*, 3 Comst. 9.

3. As well might the Legislature undertake to remove a military officer, for *disobeying the orders of his superior*, by address, instead of leaving him to be tried by a court martial, as to attempt the removal of a civil officer for any *misconduct in office*, by address, instead of impeachment.

4. The provision for removing Judges on address of the legislative body had its origin in the act of settlement of William III, *and was designed to make them independent in the discharge of their official duties.* 1 Kent's Com. 292, 294; Debates in Mass. Conv.

III.—But even if, for such causes, the Legislature had authority to pass an address for my removal from office, they have attempted to do this in a manner which is in violation of the provisions of the constitution.

"Before such address shall pass either house, *the causes of removal shall be stated,* and entered on the journal of the house in which it originated, and a copy thereof *served* on the person in office, that he may be admitted to *a hearing* in his *defence.*" Constitution, Art. 9, § 5.

This provision of the constitution was disregarded. The *causes of removal* were not stated as required; nor was I admitted to any *hearing in defence,* such as the constitution contemplates. 1 Bouv. Law Dic. 424, 633; 3 Bl. Com. 296; Rev. Stat. c. 110; Stat. 1847, c. 33; *Van Courtland* v. *Underhill,* 17 Johns. 405.

IV. The proceedings against me, being in violation of the constitution, are utterly void. They are not, like an erroneous judgment of court, of force, until reversed. They are like an illegal decision of a court martial, — of no force or validity whatever. *Brooks* v. *Adams,* 11 Pick. 441.

The proceedings are no more valid than would be an impeachment by the Senate, when no proceedings had been commenced by the House. 1 Kent's Com. 449; 1 Bishop's Cr. Law, § 51; Federalist, No. 78; 1 Kent's Com. 450.

TENNEY, C. J.— The memorialist represents to this Court that, in October, 1855, he was duly appointed and commissioned by the Governor, a Justice of the Supreme Judicial Court; that afterwards he took and subscribed the oaths required by the constitution of this State and of the United States, to qualify him to execute the trust conferred by the commission, and that he has continued in the discharge of the duties required under said commission since the time of his qualification; that after certain proceedings, which are fully set forth in the memorial, the two branches of the Legislature adopted an address to the Governor for his removal from his said office for causes specifically described in certain resolves, passed by the Senate on March 19, 1856, which make a part of the proceedings aforesaid, and on the eleventh day of April, 1856, the Governor, with the advice of the Council, upon the address of the two branches of the Legislature, undertook to remove him from said office; and that no one has been appointed in his place. Whereupon the memorialist, averring and believing that all the acts and proceedings referred to in his memorial, on the part of the two branches of the Legislature and of the Governor, are in violation of the provisions of the constitution of this State, and are, therefore, null and void, and that he has still a right to exercise the privileges and discharge the duties of his office, now claims to act as an associate Justice of the Court, and he prays its judgment and opinion thereupon; and that this memorial may be entered of record, and that notice may be ordered to be given to him, at what terms of the Court his services may be required during the current year.

It appears from the commission of the Governor, and the certificate of the oaths taken by Judge Davis, that he was duly appointed and authorized to act as a Justice of this Court; and from copies, from the office of the Secretary of State, introduced by him, that after he was duly informed of the resolves aforesaid, and the charges therein contained, and he was heard by his counsel before both branches of the Legislature, but in a manner which he alleges was entirely un-

authorized, and which was prejudicial to his rights; and after both branches aforesaid had presented an address to the Governor for his removal from his office of Justice of the Supreme Judicial Court, for the reasons set forth in the resolves and in the address; the Governor, professing to act under the authority of the constitution which declares that "every person holding any office may be removed by the Governor, with the advice of the Council, on the address of both branches of the Legislature," caused him to be informed that, "believing that there is a strong necessity for the act, that the peace and security of the citizens of the State, and a due regard to the execution of the laws demand it, in pursuance of the address of both branches of the Legislature, and with the advice of the Council, I do hereby remove Woodbury Davis, and he is accordingly removed from the office of Justice of the Supreme Judicial Court of the State of Maine."

This Court is, therefore, called upon, not only to consider the proceedings preliminary to the address of the two branches of the Legislature, and decide whether they were valid or otherwise, but also to pass upon the question, whether the attempted removal by the Governor was in conformity to the provision of the constitution in art. 9, § 5, and has the effect to disqualify him from exercising the duties appertaining to the office of a Justice of the Supreme Judicial Court, and to deprive him of the right to receive the compensation established by law for Justices of the same.

An important question is presented, whether under a proper and sufficient process, served upon parties adversely interested, this Court have the power to examine and conclusively decide the constitutional propositions stated in the memorial, to be supported or not; and if it has the power to do so, whether it is under *obligation* to take jurisdiction and pronounce a final judgment thereon.

Assuming that a constitutional question is so presented to the Court that it *can* take jurisdiction of it, and *may* decide it conclusively, and effectually, the obligation to entertain

jurisdiction, and to decide the question is imperative. The right and the duty to consider and decide are inseparable.

What was said by Chief Justice Marshall of the power and the duty of the Supreme Court of the United States is equally applicable to this Court. "It is most true that this Court will not take jurisdiction, if it should not, but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the Legislature may, avoid a measure, because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts or whatever difficulties, a case may be attended, it must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction, which is given, than to usurp that, which is not given. The one or the other would be treason to the constitution. Questions may occur, which we would gladly avoid, but we cannot avoid them." *Cohens* v. *Virginia*, 6 Wheat. 404.

In *Fullerton* v. *Bank of United States*, 1 Peters, 614, it is said by Mr. Justice JOHNSON, "What is the course of prudence and duty, when these cases of difficult distribution, as to power and right, present themselves? It is to yield rather than to encroach. The duty is reciprocal, and no doubt it will be met in the spirit of moderation and comity. In the conflicts of power and opinion, inseparable from our many peculiar relations, cases occur, in which the maintenance of principle and the constitution according to its innate and inseparable attributes, may require a different course, and when such cases do occur, our courts must do their duty." As a commentary upon the remark quoted, Judge STORY says, "The judiciary has no authority to adopt a middle course. It is compelled when called upon to decide whether a law is constitutional or not." 3 Com. on Constitution, § 1573, note 1.

Every government must be, in its essence, unsafe and unfit for a free people, where a judicial department does not exist. This power in every government must be coextensive with the power of legislation. Were there no power to interpret, pronounce and execute the law, the government would either

perish through its own imbecility, or other powers must be assumed by the legislative body to the destruction of liberty. 1 Kent's Com., Lect. 14, p. 277. The will of those who govern will become, under such circumstances, absolute and despotic, and it is wholly immaterial, whether power is vested in a single tyrant or in an assembly of tyrants. 3 Story's Com. on Con., § 1568.

"There is no liberty, if the judiciary power be not separated from the legislative and executive powers," is a principle stated by Montesquieu's Spirit of Laws, book 11, c. 6.

"Personal security and private property rest entirely upon the wisdom, the stability and the integrity of the courts of justice." 1 Kent's Com., Lect. 14, p. 273.

If that government can truly be said to be despotic and intolerable, in which the law is vague and uncertain, it can but be rendered still more oppressive and more mischievous, when the actual administration of justice is dependent upon caprice or favor, upon the will of rulers, or the influence of popularity. When power becomes right, it is of little consequence, whether decisions rest upon corruption or weakness, upon the accidents of chance or upon deliberate wrong. In every well organized government, therefore, in reference to the security both of public and private rights, it is indispensable, that there should be a judicial department, to ascertain and decide rights, to punish crimes, to administer justice, and to protect the innocent from injury and usurpation. Rawle on the Constitution, c. 21, p. 199.

Laws, however wholesome or necessary, are frequently the object of temporary aversion, and sometimes of popular resistance. It is requisite, that the courts of justice should be able at all times to present a determined countenance against all licentious acts. 1 Kent's Com., Lect. 14, p. 275.

"The complete independence of the courts of justice is peculiarly essential in a limited constitution. By limited constitution, I understand one, which contains certain specified exceptions to the legislative authority; such for instance, as that it shall pass no bills of attainder, no *ex post facto* law, and

the like. Limitations of this kind can be preserved in practice in no other way, than through the medium of the courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing." Federalist, No. 78.

Judge STORY remarks, " the independence of the judges is equally requisite to guard the constitution and the rights of individuals from the effects of those ill humors, which the arts of designing men, or the influence of particular conjunctures sometimes disseminate among the people themselves; and which, though they give place to better information and more deliberate reflection, have a tendency in the meantime to occasion dangerous innovations in government, and serious aggressions on the minor party in the community." Story on Con., § 1596.

Doctor PALEY says, "The great security for the impartial administration of justice, especially in decisions, to which the government is a party, is the independence of the judges. As protection against every illegal attack upon the rights of the subject, by the servants of the crown, is to be sought for, from these tribunals, the judges of the land become not unfrequently, the arbitrators between the king and the people; on which account, they ought to be independent of each other."

De Tocqueville remarks of the Supreme Court of the United States, that it summons sovereign powers to its bar. When the clerk of the court advances on the steps of the tribunal and simply says, "The State of New York versus the State of Ohio, it is impossible not to feel, that the Court which he addresses is no ordinary body; and when it is recollected, that one of these parties represents one million and the other two millions of men, one is struck with the responsibility of the judges, whose decision is about to satisfy or disappoint so large a number of their fellow citizens. The peace, the prosperity and the very existence of the Union are vested in the hands of these judges. Without their active coöperation, the constitution would be a dead letter. The executive appeals

to them for assistance against the encroachments of the legislative power; the Legislature demands their protection from the designs of the executive; they defend the Union from the disobedience of the States, and the States against the exaggerated claims of the Union; the public interests against the interests of private citizens, and the conservative spirit of order against the fleeting innovations of democracy." Democracy of America by De Tocqueville, p. 146.

With a view to these principles, which are so essential to the government of a free people, the framers of the constitution of this State provided therein that the powers of the government shall be divided into three distinct departments: the legislative, executive and judicial. And it is provided, that no person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, excepting · in cases in the constitution expressly directed and permitted. Con. of Maine, art. 3, § § 1 and 2.

"The first was to pass laws, the second to approve and execute them, and the third to expound and enforce them. Without the latter, it would be impossible to carry into effect some of the express provisions of the constitution." 3 Story's Com. on Cons., § 1584.

Each of the three departments being independent, as a consequence, are severally supreme within their legitimate and appropriate sphere of action. All are limited by the constitution. The judiciary cannot restrict or enlarge the obvious meaning of any legislative act, although they are bound to give construction to acts which are properly submitted to them, and to apply them, provided they do not transcend the bounds fixed by the constitution. The executive have no power to give practical interpretation to laws, in conflict with legal opinions properly given by the judiciary. The legislature are powerless in any attempt to legislate in violation of, or inconsistent with, constitutional restraints. And when, if ever, the executive or legislative departments have exercised in any respect a power not conferred by the constitution, on a

proper submission of the questions arising thereon, we have seen that the judiciary is not only permitted but compelled to sit in judgment upon such acts, and bound to pronounce them valid or otherwise.

These principles, which have been adverted to and which are really fundamental, carried out in practice by a judiciary, educated in a manner suited to qualify it for the discharge of its high trust, conscientiously determined to fullfil all the duties devolving upon it without invading the province of any other department, possessed of that firmness which disregards the temporary security which may falsely be supposed to be obtained by an undue submission to legislative or executive power, and fearlessly meeting every official call uninfluenced by the clamors of popular complaint, or ephemeral supremacy of a political party, will do much to render permanent the landmarks of the constitution and to promote the great ends of the government of a free people.

When a statute of the legislature, or any act of the executive is brought to the test of the constitution before the judiciary, it is not upon the hypothesis, that because the latter have the power to pronounce void the doings of the former, it is therefore superior. It is said in the Federalist, No. 78, " Nor does the conclusion by any means suppose a superiority of the judicial to the legislative power. It only supposes that the power of the people is superior to both; and when the will of the legislature stands in opposition to that of the people, declared in the constitution, the judges ought to be governed by the latter, rather than the former. They ought to regulate their decisions by the fundamental laws, rather than by those which are not fundamental."

When the acts of the legislative and the executive departments are found upon full consideration to be inconsistent with this fundamental law, and are so pronounced by that department entrusted with the power and compelled in duty to do so, these acts are simply void. The law, which operates upon all from the highest to the lowest, is made known, and all affected thereby, submit, not to the court, which announces the

result of the question presented, but to the majesty of the law which is omnipotent.

We are now to inquire whether the matter of the memorial is presented to this Court in such a form and manner that it has the authority to pronounce a judgment upon the constitutional question involved.

By R. S., c. 96, § 2, cognizance is given to this Court, of pleas, real, personal and mixed, and of all civil actions between party and party, and between the State and any of the citizens thereof, or other persons, resident within it, which may be legally brought before it by original writ, writ of error, or otherwise; and may render judgment, and award execution thereon, as is or may be provided by law.

By section 3, of the same chapter, the Court has jurisdiction of capital crimes, and all other offences and misdemeanors, which shall be legally prosecuted before them.

By section 5, of the chapter referred to, the court have power to issue writs of error, certiorari, mandamus, prohibition, quo warranto, and other processes and writs, to courts of inferior jurisdiction, to corporations and individuals, which may be necessary for the furtherance of justice, and the due execution of the laws. And by section 7, the court may exercise jurisdiction, power and authority agreeably to the common law of this State, not inconsistently with the constitution, or any statute.

From these provisions of the statute, the Court derive authority to exercise jurisdiction in civil and criminal matters only when they are brought *legally* before it. And it is manifest, that in ascertaining whether legally brought before it or not, reference must be had to the common law of the State.

The common law of this State in its great principles is similar to that of England, excepting so far as it has been changed by statute, or as those principles of the law itself not being applicable to our altered condition and wants, have never been adopted here.

The forms of proceedings, before judiciary tribunals, are borrowed from the country, in which the principles of the law

had their origin, and they have been confirmed or modified, from time to time, as the Legislature have considered it necessary or expedient.

It is understood by all, having knowledge of proceedings in criminal matters, that the greatest accuracy and technicality is required, and a material error therein, is an immunity to the accused.

In pleadings in civil cases, less strictness is required, and if the parties, and the frame of the original process are correct according to well settled rules, amendments are allowed in the discretion of the Court. But in these, very important distinctions are essential, in relation to the remedies attempted to be enforced for the redress of alleged wrongs. And it is proper to look at some of the doctrines appertaining to this subject as bearing upon the question before us.

"Now since all wrong may be considered as merely a privation of right, the plain and natural remedy for every species of wrong is the being put in possession of that right, whereof the party injured is deprived; or if this is impossible, by making to the sufferer satisfaction in pecuniary damages." 3 Black. Com. 116.

The instruments whereby this remedy is obtained, are a diversity of suits and actions, which are defined to be, "the lawful demand of one's right." *Ib.*

Bracton, in speaking of original writs, upon which all our actions are founded, declares them to be fixed and immutable, unless by authority of parliament. "*Sunt quædam brevia formata super certis casibus de cursu, et de communi concilio totius regni approbata et concessa, quæ quidam nulla tenus mutari poterint absque consensu et voluntate eorum.*" *Lib.* 5, *de exceptionibus, c.* 17, § 2.

"The laws adapt their redress exactly to the circumstances of the injury, and do not furnish one and the same action for different wrongs, which are impossible to be brought within one and the same description; whereby every man knows what satisfaction, he is entitled to expect from the courts of justice, and as little as possible is left to the breast of the

judges, whom the law appoints to administer and not to prescribe the remedy." 3 Black. Com. 266. And the commentator remarks, " I may venture to affirm, that there is hardly a possible injury, that can be offered to the person or property of another, for which the party injured may not find a remedial writ, conceived in such terms, as are properly and singularly adapted to his particular grievance."

Certain remedies are provided by statute, either as additional to those existing at common law, or as a substitute therefor. Complaints for the flowing of lands, for the purpose of raising a head of water for the operation of mills; petitions for the partition of real estate, and the peculiar proceedings, criminal in form, but civil in substance, by which the mother of an illegitimate child may obtain against the father a judgment of filiation and for contribution to the support of such child, are examples. The statutes prescribe the forms of these proceedings in substance at least for such cases, and provide for the notice to the parties, who may be interested, and the judgment to be awarded in each, and the means by which such judgment may be made effectual.

Where the statute has not interfered to change or modify the common law, the different writs and processes, which have long been in use for the purpose of obtaining redress, have been regarded as essential modes of remedy for alleged injuries. The writs of *certiorari, prohibition, mandamus* and *quo warranto* have undergone no material change; and when they are severally the appropriate remedies for wrongful acts or neglects, in order to secure the object sought, all their peculiar characteristics and averments must be retained.

The actions, by appropriate writs, of assumpsit, of debt, of account, of trespass upon personal property and upon the person, of trover for the conversion of property, of replevin, of the case, of trespass *quare clausum*, and writs of entry to obtain possession of real estate, have undergone few modifications by statute, and are now remedies in legitimate use and generally resorted to, according to the nature of each alleged injury. And upon trials of the actions so commenced,

if the allegations in the respective writs are sustained by proof or admission of the defendants, the proceedings become a matter of record, and the redress sought is secured by a judgment made in the proper form, as a necessary consequence; or if the proof is insufficient, a judgment in favor of the defendant is awarded, which is generally security against another suit for the same cause.

The general, and therefore the orderly parts of a suit are the original writ, or other process, with the declaration; the service upon the party adversely interested; and if there be an appearance, the pleadings in defence; the issue or demurrer; the trial, the judgment and its incidents; the proceedings in the nature of appeal, when such is allowable; and the execution. 3 Black. Com. 272.

It is under the forms established by common law or by statute, in their essential features, that these various steps are to be taken, and become legitimate, and terminate in judgments which are decisive of the rights of the parties thereto and their privies, and are followed by an execution in some form, which is designed to give effect to the judgments in favor of the party prevailing.

Unless the Legislature have provided another remedy than those which had previous existence, a party cannot adopt for himself a new mode before unknown to the law, by which he can obtain from a court of common law a binding judgment, which can be enforced, as by an execution duly issued upon a judgment recognized by the common law.

The remedy by forms of proceedings, which are of themselves legal and in common use, will fail, unless they are appropriate to the injury alleged. Much more certainly must they fail, when they are entirely novel, and not provided for in any code of binding authority upon the courts. For the recovery of damages arising from the non-fulfillment of certain classes of promises, the actions of *debt* and *assumpsit* may either be proper; but in other cases, where assumpsit is a suitable remedy, a suit in a plea of debt could not be maintained.

An action of trespass *de bonis asportatis,* when the injury designed to be proved was merely that of a breach of the close, would be regarded an absurdity. An action of trover would be improper and ineffectual, for a tortious invasion of the plaintiffs' chattels without a conversion.

A petition to a court of common law, having jurisdiction of the subject matter, if properly presented, alleging that the petitioner's personal property had been wrongfully taken, and praying that the court would adjudge him to be the owner, the caption unlawful, and order its restoration, would not be entertained. A memorial to the Court, representing that the memorialist had been wrongfully deprived of the lands of which he had been seized within twenty years by the unlawful possession taken and retained by the party named in the petition, which should pray the court, after an examination of pertinent testimony to be adduced, to render a judgment in favor of the petitioner against the respondent, touching the seizin of the former and the disseizin by the latter, and an order of restitution of the lands, is a process unknown to the law; no proceedings would be had thereon, and it could be an authority to no court under the laws of this State to take jurisdiction of the matter.

We have already seen, that, in a suit brought in a court of common law, a service upon the person or persons adversely interested is essential; without this, in some mode recognized by law, the court cannot proceed; and if, inadvertently, a judgment should be rendered, it would be a nullity or would be reversed as erroneous on proper proceedings. Before a conclusive judgment can be rendered, which can in any manner affect another party, in the most trivial suit, that party must have legal notice of its pendency.

A judgment in defiance of the maxim, *audi alteram partem,*" was said by LIVINGSTON, Justice, in the case of *Hitchcock* v. *Fitch,* 1 Caines, 460, not to deserve the name of judgment, but must be treated as a nullity, and could have no validity.

The Legislature and the Executive of the State are charged in the memorial as having done illegal and unconstitutional

acts, to the injury of the memorialist. By the proceedings and the documentary evidence presented, these departments claimed to have undertaken and performed those acts by the authority of the constitution. If the Legislature exercised a constitutional power, and in a constitutional manner, to address the Governor for a removal of Judge Davis, and the executive made the removal, in pursuance of a right conferred by the constitution, he is without remedy, and must submit to the exercise of that power, possessed under the fundamental law of the land; notwithstanding he may believe that the removal was most indiscreet and oppressive. If the removal shall at any time be decided, under proper proceedings by the tribunal vested with the authority to entertain jurisdiction of the matter, to have been properly made, other and important results must follow, beside those interesting to Judge Davis personally. Instead of a Chief Justice and seven associate Justices of this Court, there are only a Chief Justice and six associates. All acts attempted by the memorialist as a Justice of this Court would be without effect. Orders, decrees or judgments made or pronounced by him would be *coram non judice*. The decisions of questions of law, by the law court in which he should participate as one of its members, would not differ in effect from the judgments and decrees made by members of the court, aided by a private citizen of equal qualifications in attainments and general ability, in their deliberations.

On the contrary, if the constitution under the charges made against Judge Davis, gave no right to the Legislature to address the Governor for his removal, and consequently none to the Executive to make it, the power exercised by each was usurped, and their acts were really ineffectual. The people themselves, in their own fundamental law which is proclaimed in the constitution, had set bounds, which, if transcended in this and kindred matters, the servants of the people constitutionally and legally appointed remain undischarged, and their rights unimpaired; and the attempt of the people's other servants to remove them is abortive.

Davis, *ex parte.*

It is manifest that in a conclusive judgment upon the question, whether Judge Davis is still required to perform the duties devolving upon a Justice of this Court, so long as he insists that the removal is a nullity and claims to be entitled to the privileges and emoluments pertaining thereto, very important public and private rights are involved. Under such a judgment, the action of the Legislature and of the Executive might in some measure be very different, according as this Court should sustain their action in causing the removal, or otherwise.

To entertain jurisdiction of this memorial, and to proceed to a consideration and decision of the questions embraced, is one of the highest and most responsible trusts, which can be executed by this Court. A judgment under legal proceedings, fully authorized between the parties to a suit, wherein such questions are necessarily involved, would be conclusive upon such parties. It would be equally so, under such authorized proceedings and such issues, if the State and a Judge attempted to be removed, were the parties before the Court.

This Court is informed, in the memorial and by the documents in the case, of all the acts of the coördinate branches of the government, alleged therein to be irregular, unlawful and unconstitutional. This representation is made in no form or process known to the common law, or the statutes, by which we can be bound, or which will enable us to act in the premises. The memorialist has caused no process connected with the memorial to be served upon any one, whether adversely interested or otherwise. No department of the government or officer thereof has appeared voluntarily, and claimed to be heard. The memorialist is the only party before us. It may not be his fault, that it is so. On the contrary, it is evident, that in an attempt to cause another party to be brought before the Court, difficulties would have met him. But this inability on his part, under the circumstances which are presented, will not of itself confer a jurisdiction upon the Court. In what form or by what authority, either of law or precedent, a judgment under the memorial, having the material charac-

teristics of a judgment favorable or adverse to the claim of Judge Davis, can be rendered and duly recorded, is not apparent.

Whether the acts of the Senate, House of Representatives, and the Governor, complained of, were illegal or unconstitutional, or not, for reasons already given, is a question which we cannot regard as before us, so as to authorize any judgment, which can have the effect to place Judge Davis in the situation which he insists he is entitled to hold, or to compromit in the slightest degree any right which he or any other party may now possess. The question is so important, affecting so many interests and to such extent, that an opinion of this Court thereon, as it is now presented, can be attended with no useful results, inasmuch as the opinion can but be regarded by us as ineffectual, and not concluding the rights of any. We abstain from all consideration of the great matter attempted to be brought before us for adjudication, wholly for want of jurisdiction, which we are fully satisfied we cannot entertain, under the process, and the case generally, as presented. And for reasons just mentioned, it is equally our intention to withhold all intimation of what the decision would be, touching the rights of the memorialist, if presented under appropriate legal proceedings, which would at the same time give the Court the right, and require the exercise of it, in the discharge of a duty, to make a decision upon the same questions, which would of necessity be binding as well upon the coördinate branches of the government, as upon other parties, who might be parties to the controversy.

When a case shall come before this tribunal, involving these important inquiries, whether between a Judge of this Court, attempted to be removed, and the State, or the branches of the government which made the attempt, under a writ of *quo warranto* or other process recognized by law, which will confer jurisdiction; or in the more usual forms of law between private parties, where the removal of such an officer of the government is a matter at issue; it is believed, that the Court will, as it should do in the discharge of all its official du-

ties, have a single eye to discern the right as it exists, and when seen satisfactorily, to make declaration thereof in its final judgment. If it should, on a full examination of the subject, come deliberately to the conclusion that the coördinate branches had not transcended the limits fixed by the framers of the constitution, and the people who adopted it, it should not hesitate to record its convictions in the judgment to be pronounced, notwithstanding the disappointment of honest minds, which might differ from that of the Court, or the feelings of others, who might look upon the result as a triumph or a defeat in a partizan warfare. On the other hand, if the acts resulting in the removal of Judge Davis, should be.held a violation of constitutional restraints, or otherwise invalid, it would be only the declaration of the fundamental law of the land as applicable to that question, as it should on examination be found to be, that the removal was inconsistent with its true construction. Such declaration would not imply in the least degree a superiority over coördinate branches, but would be simply the discharge of an imperious duty, required under the constitution of the judiciary alone, and which cannot be divided with, or surrendered to another department, equally independent in its own sphere of action. A hesitation to pronounce such a decision fearlessly, would disclose a weakness, which is totally inconsistent with juridical capacity.

RICE, HATHAWAY, APPLETON, CUTTING and MAY, J. J., concurred. GOODENOW, J., dissented.

GOODENOW, J. — Judge DAVIS, in his memorial, claims to be a member of this Court, notwithstanding the proceedings of the Senate and House of Representatives and of the Governor and Council in relation to his alleged removal.

If these proceedings are unconstitutional, he is still a member of this Court, unless he waives his objections to them. He does not waive his objections, but claims to be recognized by this Court as one of its members, and to have his share of its duties assigned to him. In my opinion, it is the right and the duty of the Court to determine who are its members.

The Senate and the House do this, and I see no reason why this Court must not do it. It is a question in which the public is interested as well as the Court. It is a case not within the reach of a writ of *quo warranto,* or of *mandamus.* It would hardly be respectful to a coördinate branch of the government, for Judge Davis to do any act as a Justice of this Court, in order to lay the foundation for a writ of *prohibition.* His rights should not be made to depend upon the decision of questions between other parties. He is entitled to a direct decision of the question on his own claim.

It may be an *ex parte* proceeding from necessity, because there is no other party to be summoned to answer to him. Neither the Senate or House, or Governor or Council can be considered as a party. It is analogous to " *monstrans de droit.*"

" When the right of the party as well as the right of the crown appears upon record, then the party shall have *monstrans de droit,* which is putting in a claim grounded upon facts already acknowledged and established, and praying the judgment of the Court, whether upon these facts the king or the subject hath the right." 3 Black. Com. 256, c. 17.

In this case, there is no controversy about the facts. One who has been a member of the Court and still claims to be a member, upon these facts raises a question of constitutional law, and asks the Court to declare its opinion upon that question, as one in which he is deeply interested, and one in which this Court and the public are interested.

I think it suitable and proper for the Court to entertain the memorial and to express an opinion upon the question.