NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STATE OF ALASKA,

Appellant,

v.

W.P., a minor, and A.P., his parent,

Appellees.

Court of Appeals No. A-11739
Trial Court No. 4BE-11-014 DL

O P I N I O N

No. 2450 — April 24, 2015

Appeal from the Superior Court, Fourth Judicial District, Bethel, Charles W. Ray, Jr., Judge.

Appearances: Donald Soderstrom, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellant. Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellee W.P.. Shelley K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for Appellee A.P..

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

_____

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In November 2011, W.P. was adjudicated a delinquent minor based on his admission that he committed arson by burning a building. The superior court placed W.P. on probation for one year — *i.e.*, until November 3, 2012.

As a result of W.P.'s delinquency adjudication, the superior court was required by law to order W.P. and his mother, A.P., to make restitution for the damage that W.P. caused. *See* AS 47.12.120(b)(4)(A)-(B). The superior court's judgement did, in fact, specify that W.P. and A.P. were to make restitution in an amount to be determined later.

W.P. later reached an agreement with the State to pay a specific amount of restitution, and the superior court accepted this agreement. However, the litigation of A.P.'s restitution obligation was delayed for many months because of procedural errors and problems in obtaining legal counsel for A.P..

The restitution proceedings against A.P. remained unresolved when, in early November 2012, her son's juvenile probation ended and the superior court lost its juvenile court jurisdiction over him. *See* AS 47.12.160.

At that point, A.P. (through counsel) asked the superior court to dismiss the restitution claim against her. A.P. argued that, under the provisions of AS 47.12.160, the superior court lost its subject-matter jurisdiction, not just over her son, but over the entire case — including any restitution claim against her — when W.P. finished his year's probation. The superior court agreed with this interpretation of the statute and dismissed the State's restitution claim against A.P. for lack of jurisdiction. The State now appeals this dismissal.

For the reasons explained in this opinion, we hold that the superior court continued to have subject-matter jurisdiction to adjudicate A.P.'s restitution obligation even after her son's probation ended. We therefore reverse the decision of the superior court.

*Underlying facts*

Sixteen-year-old W.P. set fire to the Coastal Village Regional Fisheries building in the village of Quinhagak. On November 3, 2011, under the terms of a plea bargain, W.P. formally admitted this conduct, and he was adjudicated a delinquent minor. The plea bargain called for W.P. to be placed on juvenile probation for one year — *i.e.*, until November 3, 2012.

The plea bargain also called for W.P. to make restitution in an amount to be determined later. In this respect, the plea bargain merely reflected the superior court's statutory duty under AS 47.12.120(b)(4). Under this statute, the court was required to order both W.P. *and* his mother, A.P., to make restitution for the damage that W.P. had caused. *See* AS 47.12.120(b)(4)(A)-(B).

The superior court's disposition order (*i.e.*, its judgement) did, in fact, declare that both W.P. and his mother, A.P., were required to pay restitution in an amount to be determined later.

*(a) The litigation of W.P.'s restitution obligation*

The State initially filed a request for restitution in the amount of $103,378. W.P. filed an objection to the proposed restitution amount, and the superior court scheduled a hearing for April 2012. But at that April hearing, the attorneys for W.P. and the State announced that they had reached an agreement concerning the amount of W.P.'s restitution obligation. The parties agreed that W.P. should pay $84,878 in restitution (a reduction of about $20,000 from the amount originally requested). W.P.'s attorney expressly told the court that W.P. "[was] in agreement with [this] restitution amount" and "[was] not contesting restitution on his part."

W.P.'s attorney also told the court that the State had recently filed a proposed amended restitution order that reflected the parties' agreement. The superior court replied, "Haven't seen it, but I'll take your word for it."

However, it appears that this amended restitution order was never filed. The superior court's file does not contain any such document. Indeed, the superior court's file contains *no* signed order setting the dollar amount of W.P.'s restitution obligation. In other words, no one ever followed up on the parties' stipulation (in open court) that W.P. would pay restitution in the amount of $84,878.

*(b) The litigation of A.P.'s restitution obligation*

The litigation of A.P.'s restitution obligation was repeatedly delayed, over a period of more than a year, because of procedural errors and problems in obtaining an attorney for A.P..

The first procedural error occurred in November 2011: the superior court neglected to serve its judgement on A.P. The following month, when the State filed its proposed restitution order (specifying a dollar amount of $103,378 for the damage), the State neglected to serve A.P. with the proposed order. Then, in mid-January 2012, when the superior court issued a notice saying that restitution would be ordered in the amount requested by the State unless there was an objection, the court again neglected to serve A.P..

As we have already explained, W.P. (who *was* served with this notice) filed an objection to the proposed restitution amount, and the superior court accordingly scheduled a restitution hearing in April 2012. But again, no one notified A.P. of this hearing. Indeed, at this hearing, W.P.'s attorney told the court that, as far as the attorney knew, A.P. remained unaware that anyone was seeking restitution from her.

A follow-up hearing was held at the end of May 2012 — but, again, no one notified A.P. of the proceedings. The superior court ruled (correctly) that this hearing could not go forward because A.P. was entitled to notice of the proceedings, as well as an opportunity to obtain counsel. The court decided to send a letter to A.P. informing her of the State's restitution request, the date of the next hearing (July 2012), and the telephone number of the Alaska Legal Services Corporation. The State also notified A.P. of the July hearing.

A.P. appeared telephonically at this July 2012 hearing, but she told the court that she had been at fish camp, and that she had been unable to contact Alaska Legal Services until recently. Because A.P. had not had the opportunity to consult an attorney, the superior court continued the hearing until August 2nd.

The restitution claim was not resolved at the August 2nd hearing because Alaska Legal Services took the position that they could not represent A.P. (because delinquency matters were the equivalent of criminal cases, and thus beyond the agency's purview). The superior court continued the hearing until August 31st, and the court appointed the Office of Public Advocacy to represent A.P. — even though it was unclear whether that agency was authorized to represent someone in A.P.'s position.

At the August 31st hearing, the Office of Public Advocacy did, indeed, take the position that they were not authorized to represent someone in A.P.'s position, and they moved to withdraw from further representation of A.P.. The court granted this motion. Then, under the authority of Alaska Administrative Rule 12(e), the court appointed a private attorney, Heather Sia, to represent A.P. in the restitution matter. At the same time, the court scheduled the next restitution hearing for November 29, 2012 — a date beyond the expiration of W.P.'s one-year juvenile probation.

For reasons not explained in the record, no hearing was held in November 2012. Instead, the next hearing was held six weeks later, in January 2013. At that

hearing, A.P.'s attorney informed the court that she would be filing a motion concerning the court's jurisdiction.

That jurisdictional motion was filed at the end of February 2013. In this motion, A.P.'s attorney contended that, under the terms of AS 47.12.160, the superior court lost its jurisdiction over the entire case when W.P.'s juvenile probation ended (on November 3, 2012). Thus, the attorney argued, the superior court no longer had the authority to enter a restitution order against A.P..

The superior court ultimately agreed that it had lost its jurisdiction over the entire case when W.P.'s probation ended in November 2012. The superior court therefore granted A.P.'s motion to dismiss the restitution proceedings.

(W.P. did not participate in the litigation of this jurisdictional issue.)

*Why we conclude that we should reach the State's arguments about the superior court's subject-matter jurisdiction, even though the State did not raise these arguments until it filed its motion for reconsideration of the superior court's order of dismissal*

In this appeal, the State contends that the superior court was wrong when it concluded that its entire jurisdiction over this case ended when W.P.'s juvenile probation ended, and that AS 47.12.160(a) precluded the court from entertaining any further proceedings on the question of A.P.'s restitution obligation.

But the State did not raise this argument when it initially responded to A.P.'s motion to dismiss, even though A.P. explicitly argued that the superior court had lost its subject-matter jurisdiction over the case. In the State's initial response, the State more or less conceded that the superior court's jurisdiction *had* ended when W.P.'s probation ended — but the State argued that A.P. had waived this jurisdictional defect

by not demanding a quicker resolution of the restitution question. (The State is no longer pursuing this waiver theory.)

Only after the superior court granted A.P.'s motion to dismiss (on the ground that the court's jurisdiction over the case had ended) did the State finally argue that, despite the provisions of AS 47.12.160(a), the superior court retained continuing jurisdiction to resolve the issue of A.P.'s restitution obligation.

The superior court denied the State's motion for reconsideration by failing to rule on it within 30 days. [1] We conclude that this was error: the superior court was required to address the merits of the State's jurisdictional argument.

Normally, a court is under no obligation to consider arguments raised for the first time in a motion for reconsideration. [2] And if the court decides *not* to address the party's argument, the party is not allowed to pursue that argument on appeal. [3]

But the rule is different when the issue to be resolved is the court's subject-matter jurisdiction — *i.e.*, the court's legal authority to hear and decide a particular type of case.

The question of subject-matter jurisdiction takes precedence over all others. "[Because] a court which does not have subject matter jurisdiction is without power to decide a case, this issue cannot be waived, and [it] can be raised at any point during the litigation." *Wanamaker v. Scott*, 788 P.2d 712, 713 n. 2 (Alaska 1990). Indeed, a court

---

[1] See Alaska Delinquency Rule 17(a), which declares that motion practice in delinquency cases is governed by the Criminal Rules, and Alaska Criminal Rule 42(k)(4), which declares that if the court has not ruled on a motion for reconsideration within 30 days, "the motion shall be taken as denied."

[2] *Cooper v. District Court*, 133 P.3d 692, 715-16 (Alaska App. 2006).

[3] *Ibid.*

is required to resolve a question as to its own subject-matter jurisdiction, even when the court has identified a jurisdictional question that the parties have not raised. [4]

So, for example, in *Knipe v. State*, 305 P.3d 359, 362 (Alaska App. 2013), this Court entertained (and ordered supplemental briefing on) an issue of subject-matter jurisdiction that was raised for the first time in the defendant's reply brief — even though issues raised for the first time in a reply brief are normally waived. [5] *See also Fletcher v. State*, 258 P.3d 874, 877 (Alaska App. 2011) (the court's lack of subject-matter jurisdiction is a defect that is not waived by a defendant's no contest plea).

The present case is slightly different from the ones we referred to in the preceding two paragraphs. In the present case, the superior court had *already* ruled that it did *not* have subject-matter jurisdiction, and the State sought reconsideration, arguing that this ruling was a mistake — that the court did in fact have subject-matter jurisdiction. But even though the State's jurisdictional argument was raised in a motion for reconsideration, the superior court was nevertheless obligated to address the State's argument.

The guiding principle here is that, if a court has subject-matter jurisdiction over a particular category of case, the court is *required* to adjudicate all such cases that are properly brought to it. "[I]t is a time-honored maxim of the Anglo-American common-law tradition that a court possessed of jurisdiction generally must exercise it." *Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493, 496-97; 91 S.Ct. 1005, 1009; 28 L.Ed.2d 256 (1971).

In American jurisprudence, the most famous enunciation of this principle is found in Chief Justice Marshall's opinion in *Cohens v. Virginia*:

---

[4] *Robertson v. Riplett*, 194 P.3d 382, 386 (Alaska 2008); *Reandeau v. State*, 265 P.3d 1045, 1058 (Alaska App. 2011).

[5] *Ahvakana v. State*, 283 P.3d 1284, 1288 (Alaska App. 2012).

> It is most true that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution [or] because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.

*Cohens v. Virginia*, 19 U.S. 264, 404; 5 L.Ed. 257 (1821). [6]

This same principle is echoed in many state court decisions as well. [7] Indeed, the Supreme Court of Indiana has declared that when a court wrongfully refuses to hear a case within its jurisdiction, an aggrieved litigant is entitled to seek an appellate writ of mandamus, ordering the lower court to hear the case: "[M]andate will lie to require an inferior court to hear the merits of a cause where it was improperly

---

[6]   *Accord*, *Ex parte Young*, 209 U.S. 123, 143; 28 S.Ct. 441, 447; 52 L.Ed. 714 (1908); *Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers & Trainmen, Gen. Comm. of Adjustment, Central Region*, 558 U.S. 67, 71; 130 S.Ct. 584, 175 L.Ed.2d 428 (2009) ("[W]hen jurisdiction is conferred, a court may not decline to exercise it.").

[7]   *See* (in chronological order) *Ex parte Davis*, 41 Me. 38, 50; 1856 WL 2084 (Me. 1856) ("[A court's] right and the duty to consider and decide [a case] are inseparable."); *State ex rel. Lopez v. Killigrew*, 174 N.E. 808, 809 (Ind. 1931) ("[W]hen a court has jurisdiction over a class of cases and one seeking relief invokes the jurisdiction of the court in the manner prescribed by law, ... the court cannot refuse jurisdiction."); *Shewbrooks v. A.C. and S. Inc.*, 529 So.2d 557, 560 (Miss. 1988) ("When we have a case before us which we have the lawful authority to decide, we have *no* authority *not to decide it*. We ... cannot refuse to hear a case[.]"); *Pierce v. Albertson's Inc.*, 911 P.2d 877, 881 (N.M. 1996) ("The courts of this state have a duty to hear matters properly brought before them[.]"); *Betensky v. Opcon Associates, Inc.*, 738 A.2d 1171, 1176 (Conn. Super. 1999) ("Courts, as institutions, have an obligation to hear cases properly brought before them."); *Rutherford Electric Membership Corp. v. 130 of Chatham, LLC*, 763 S.E.2d 296, 300 (N.C. App. 2014) ("While courts shall not take jurisdiction when it is not granted, likewise courts must take jurisdiction when there is an express grant.").

dismissed [for want of subject-matter jurisdiction]." *Rosenbarger v. Marion Circuit Court*, 155 N.E.2d 125, 127 (Ind. 1959).

Accordingly, in the present case, the superior court was required to address the merits of the State's motion for reconsideration on the issue of subject-matter jurisdiction — because, if the State was right, it would be plain error for the superior court to fail to exercise its jurisdiction to adjudicate A.P.'s restitution obligation.

But we need not remand this case for further consideration by the superior court. Given the facts of this case, the jurisdictional issue presented here is purely one of law. Thus, even if the superior court had actively reconsidered the question of its subject-matter jurisdiction, this Court would not defer to the superior court's ruling. Instead, we would decide the issue *de novo* — which we proceed to do now.

*Why we conclude that the superior court continues to have jurisdiction to enter a restitution order against A.P.*

Under Alaska law, a minor's parents are parties to any delinquency proceeding against their child. [8] And if a minor is adjudicated delinquent based on conduct that causes compensable damage to another person, the superior court must "order ... the minor's parent to make suitable restitution" unless the minor was a runaway or was missing at the time of the delinquent conduct (and the parent had reported this fact to the police). AS 47.12.120(b)(4)(A)-(B).

Therefore, when the superior court found W.P. to be a delinquent minor based on his act of arson, the superior court was required to order both W.P. and his

---

[8]    Alaska Delinquency Rule 2(n). See also Delinquency Rules 8(b) and (c), which require the superior court to issue a summons to the minor's parents at the beginning of a delinquency proceeding, and to serve (or require service of) a copy of the petition on the parents.

mother, A.P., to pay restitution. And the superior court did, in fact, order both W.P. and A.P. to make restitution. Paragraph 2 of the court's disposition order states: "It is ... ordered that the minor and the minor's parent(s) make restitution as provided in the Restitution Order ... [that] will be forthcoming in a separate document."

But the amount of A.P.'s restitution obligation remains unresolved. As we have explained, the State and the superior court repeatedly failed to provide proper notice to A.P. about the State's efforts to establish a dollar amount for the restitution. Then, after A.P. finally did receive proper notice, it took several months for the superior court to find a lawyer to represent A.P.. And by the time a lawyer was procured and the issue was finally ready to be litigated, W.P.'s one-year juvenile probation had ended.

The superior court concluded that the ending of W.P.'s probation marked the end of the court's jurisdiction to adjudicate A.P.'s restitution obligation. The court's ruling was based on the provisions of AS 47.12.160, a statute entitled "Retention of jurisdiction over minor". Subsection (a) of this statute provides (in pertinent part):

> (a) [The superior court] retains jurisdiction over [a delinquency] case and may at any time stay execution, modify, set aside, revoke, or enlarge a judgment or order, or grant a new hearing, ... for a period of time not to exceed the maximum period otherwise permitted by law or in any event ... past the day the minor becomes 19, unless [the minor is] sooner discharged by the court ... .

The superior court interpreted this provision to mean that the court lost all authority over the case — including any authority to enter a final restitution order against A.P. — on the day that W.P.'s juvenile probation expired.

But the delinquency statutes contain two other provisions dealing specifically with restitution, and both of these provisions grant extended subject-matter jurisdiction to the superior court on the issue of restitution.

– 11 –                                    2450

Subsection (f) of AS 47.12.160 states that, notwithstanding other provisions of law, the superior court "shall accept ... prepayments of restitution *or payments in anticipation of an order of restitution.*" (Emphasis added.) In other words, notwithstanding the temporal jurisdictional limitation codified in subsection (a) of the statute, the superior court is still required to accept payments from a minor or a minor's parent toward a restitution obligation that the parties anticipate the court will issue *in the future*.

This provision strongly implies that in situations like the present case — instances where the superior court has issued a disposition order that directs a minor and a minor's parent to pay restitution in an amount to be determined later — the superior court retains subject-matter jurisdiction to issue a final order fixing the dollar amount of the restitution even after the court has lost its jurisdiction to alter other aspects of the delinquency judgement under the provisions of subsection (a).

A similar expansion of the superior court's subject-matter jurisdiction is found in AS 47.12.170(a), a statute that deals directly with the enforcement of restitution orders in delinquency cases. This statute declares that if the superior court orders a minor or their parent to pay restitution as part of the court's disposition order under AS 47.12.120, that portion of the court's order "is a civil judgment that remains enforceable after the expiration of the court's jurisdiction over the minor under AS 47.12.160."

Again, this provision suggests (although it does not explicitly say) that once the superior court orders a parent to pay restitution, the court retains a continuing authority to establish or adjust the precise dollar amount of this restitution obligation, or to take other action relating to the enforcement of this obligation (such as establishing or altering a payment schedule).

These statutory provisions support the State's position that, despite the ending of W.P.'s juvenile probation, the superior court retained subject-matter jurisdiction (1) to adjudicate the dollar amount of A.P.'s restitution obligation, and then (2) to issue a final restitution order directing her to pay that amount.

The Alaska Legislature has endorsed a policy of obtaining restitution for the damages or injuries suffered by crime victims. As we explained earlier in this opinion, the statute governing disposition orders in delinquency cases *requires* the superior court to order restitution. *See also* AS 12.55.045(a) and *Maillelle v. State*, 276 P.3d 476, 479 (Alaska App. 2012) (recognizing this same policy in criminal cases).

Interpreting the provisions of AS 47.12 to give the superior court continuing subject-matter jurisdiction over the issue of restitution would obviously advance this legislative policy. On the other hand, the superior court's interpretation of these statutes — the interpretation proposed by A.P. — would defeat that policy.

In the present case, for example, the delinquent minor was placed on probation for one year. There will be times when a court might require a year, or longer, to finally determine the amount of restitution due from the minor and the minor's parent — either because of the types of procedural difficulties illustrated by this case, or because the calculation of the restitution is complicated, or the amount of restitution is disputed, or because of a combination of these factors.

Under A.P.'s suggested interpretation of the statutes, a minor or a parent could avoid restitution altogether, not because restitution was unwarranted or unfair, but simply because the superior court needed more time to properly complete the restitution litigation. This would defeat the public policy behind the requirement of restitution, without materially advancing any other contravening policy.

For these reasons, we interpret the provisions of AS 47.12.160 and 170 as conferring extended subject-matter jurisdiction to the superior court on the question of

– 13 –                                                    2450

restitution. When, as here, the superior court has issued a disposition order directing a minor or a minor's parent to make restitution in an amount to be determined later, the court retains continuing subject-matter jurisdiction (1) to adjudicate the dollar amount of that restitution obligation, and then (2) to issue a final restitution order directing the minor or the parent to pay that amount, either immediately or in a series of scheduled payments.

*Why we conclude that the superior court continues to have jurisdiction to enter a restitution order against W.P.*

As we explained earlier, W.P. and the State reached an agreement that W.P. would pay restitution in the amount of $84,878. This agreement was presented in open court, and W.P.'s attorney told the court that the State had filed a proposed restitution order incorporating this agreement. But the proposed order was, in fact, never filed, and the superior court has never issued an order setting the dollar amount of W.P.'s restitution obligation.

When A.P. litigated the issue of subject-matter jurisdiction in the superior court, W.P. did not participate. Even after the superior court ruled in A.P.'s favor on the jurisdictional issue, W.P. did not ask the superior court to vacate his agreed-upon restitution obligation.

But now, on appeal, W.P. argues that his restitution obligation should be invalidated. W.P.'s argument is based on the same legal premise as A.P.'s argument. W.P. notes that, at the time his probation ended, the superior court (apparently through oversight) had never issued a formal order incorporating the parties' agreement as to the dollar amount of W.P.'s restitution obligation. W.P. contends that it is now too late for the superior court to issue such an order (or to take any other action to enforce W.P.'s agreement with the State).

Given the procedural history of this case, one might suspect that W.P. is equitably estopped from pursuing this argument.[9] But we need not decide that issue. As we explained in the preceding section of this opinion, the underlying premise of W.P.'s argument is incorrect: the superior court continues to have subject-matter jurisdiction to adjudicate W.P.'s restitution obligation — or, more precisely, to issue an order incorporating the agreement that W.P. reached with the State regarding his restitution obligation.

*Conclusion*

The decision of the superior court is REVERSED, and we remand this case to the superior court for further proceedings to adjudicate A.P.'s restitution obligation. We also direct the superior court to take the ministerial step of issuing an appropriate order establishing the dollar amount of W.P.'s restitution obligation (in conformity with the agreement reached between W.P. and the State).

We do not retain jurisdiction over this case.

---

[9] See *Sowinski v. Walker*, 198 P.3d 1134, 1147 (Alaska 2008), which explains the related doctrines of quasi-estoppel and equitable estoppel, both of which bar a party from taking a position that is inconsistent with the party's earlier position if "allowing that party to maintain the latter, inconsistent position would be unconscionable" (quasi-estoppel) or if another person "has reasonably and detrimentally relied" on the party's earlier position (equitable estoppel).