NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of | ) |
| | ) Supreme Court No. S-16999 |
| ALEXINA RODMAN. | ) |
| | ) Superior Court No. 3KN-15-00015 PR |
| | ) |
| | ) <u>MEMORANDUM OPINION</u> |
| | ) <u>AND JUDGMENT</u>* |
| | ) |
| | ) No. 1720 – May 1, 2019 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Robert J. Molloy and Kristine A. Schmidt, Molloy Schmidt LLC, Kenai, for Appellant Glenn Rodman. Notice of nonparticipation filed by Noah H. Mery, Gilman & Pevehouse, Kenai, on behalf of Appellee Merle Welch, Personal Representative of the Estate of Alexina Rodman.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

1.      Alexina and Glenn Rodman divorced in 2000 after a nine-year marriage. Shortly after their divorce, they again began living together in Nikiski. Alexina died in Scotland in December 2014.

2.      Alexina's daughter, Merle Welch, was appointed personal representative of Alexina's estate. Alexina left a will providing, in relevant part: "Glenn Rodman ex-husband, can live in my house until his death. Upon his death the house will

---

*          Entered under Alaska Appellate Rule 214.

be sold. It may not be sold before that. . . . Lots that are to be sold are Block 2 Lot 7, and 8 with house." The superior court later interpreted this language to mean that Alexina intended Glenn to have a life estate in Lots 7 and 8, Block 2 of Aurora Heights Subdivision and a 1976 mobile-home trailer located on those lots (the 1976 trailer).

3. In February 2015 — apparently without knowledge of the will's contents — Glenn presented claims against the estate pursuant to AS 13.16.465.[1] Glenn asserted that Alexina had sold him Lots 2, 6, and 7 in Block 2 of Aurora Heights Subdivision prior to her death but that she had never delivered the deeds to him. He contended that he had paid for an addition to the 1976 trailer, situated on Lot 8, and that the addition thus belonged to him. He also contended that he and Alexina had agreed that, after they both died, Lots 7 and 8 and the 1976 trailer would be sold and that the proceeds would go into a college fund for their great-granddaughter. Glenn requested that the estate honor that agreement. In May the estate disallowed Glenn's claims, and in July Glenn petitioned the court under AS 13.16.475(b) to allow them.[2]

4. The court held an evidentiary hearing in May 2016 on Glenn's claims. Following the hearing the court requested further briefing, without deciding Glenn's claims. The briefing request noted that several issues remained open in the case, including:

---

[1] AS 13.16.465 dictates the procedure for a creditor to present a claim to the personal representative of an estate.

[2] AS 13.16.475(b) provides that "[u]pon the petition . . . of a claimant in a proceeding for the purpose, the court may allow in whole or in part any claim or claims presented to the personal representative or filed with the clerk of the court in due time and not [otherwise] barred."

(1) Whether [Alexina] sold lots 2, 7, and 8[3] to [Glenn] before her death; (2) [Whether] such a sale [was] valid under the Statute of Frauds; (3) What is the importance of [Alexina] and [Glenn's] prior agreement related to the distribution of their property; and, (4) Whether [Glenn] should recover any value expended in improving the property.

The court stated that "before reaching any of th[ose] issues, [it] must first ascertain what the property relationship was between [Glenn] and [Alexina] as cohabitants." The court requested that Glenn and the estate provide further briefing discussing whether Glenn and Alexina were in a domestic partnership and the effect such a partnership would have on the remaining issues. Shortly after this request, the superior court judge who had been handling the case retired and his cases were reassigned.

5. After considering the subsequent briefing, the succeeding superior court judge ruled in April 2017 that Alexina and Glenn had no "special legal relationship which would distinguish the property distributable to [Glenn] from that distributable to another person who was a legal stranger to [Alexina]." The court reasoned that Glenn did not qualify as a "surviving spouse" entitled to an elective share under Alaska's probate code. The court did not address this decision's effect on the other open issues.

6. In June, with Glenn's claims still undecided, the estate filed a motion for an order quieting title to two mobile homes: a 1971 trailer Merle allegedly owned and the 1976 trailer Alexina allegedly owned. The estate claimed that Glenn went to the Department of Motor Vehicles (DMV) in July 2015 and had both trailers re-titled in his name by forging Merle's and Alexina's signatures. At an evidentiary hearing on the estate's motion, the only evidence the estate provided was Merle's testimony. Merle testified that Glenn transferred the trailers' titles into his name approximately eight

---

3 The court likely meant Lots 2, 6, and 7, consistent with Glenn's original petition and evidence he presented at the May 2016 hearing.

months after Alexina's death and that the signatures on the 1976 trailer's title document were not her mother's. Glenn testified that he and Alexina purchased the 1976 trailer together and that he subsequently bought it from her outright for approximately $2,500. He said that Alexina had retained the title following the sale, but at some point before her 2014 trip to Scotland she signed the title and gave it to him. Glenn testified that, rather than immediately taking the title to the DMV, he put it in a briefcase because he thought he would die before Alexina and he did not want her to have to go through the trouble of transferring the title back into her name after he died. This statement appears consistent with Glenn's claim and earlier testimony that he and Alexina intended the 1976 trailer and Lots 7 and 8 would be sold after they both died to help fund their great-granddaughter's college expenses.

7.      The superior court ultimately denied the estate's request to quiet title to the 1971 trailer because it was unrelated to the estate, but found that the 1976 trailer was "properly included in the estate and title was not effectively transferred to [Glenn]." The court held that the estate failed to prove its forgery claim, finding that the signature on the 1976 trailer's title documents looked similar to Alexina's signature on her will. But the court was troubled by Glenn having waited so long to transfer the title to his name and by the lack of detail on the title regarding the alleged sale of the trailer to Glenn. It discounted Glenn's testimony regarding Alexina's sale of the trailer to him, concluding that, because Alexina's will "clearly anticipates that 'Lot 7, and 8 with house'" would be sold following Glenn's death, as of August 2014 Alexina believed she owned the 1976 trailer.

8.      At the estate's request, the superior court issued a supplemental order in February 2018 containing the vehicle identification number, year, make, and body style of the 1976 trailer. Glenn appealed following that order, arguing that the superior court erred by: (1) not issuing any decision on his claims against the estate regarding

Lots 2, 6, and 7, and the addition to the 1976 trailer; (2) holding that his and Alexina's relationship status did not affect the distribution of her property; and (3) ruling that Alexina did not effectively transfer title to the 1976 trailer to him.

9. Although Glenn brought this appeal pursuant to Alaska Appellate Rule 202, there seems to have been no relevant final judgment entered in this case.[4] The ruling on the 1976 trailer certainly terminates the litigation as to that issue; and if not as to all issues, we nonetheless may treat Glenn's appeal as a granted petition for review under Alaska Appellate Rule 402 and accept jurisdiction.[5] The lack of a decision on Glenn's remaining claims — more than two years after the superior court's first evidentiary hearing and after Glenn's repeated requests for a decision — also means that we may accept jurisdiction as an original application for relief under Appellate Rule 404(a)(1).[6] On this basis we consider all of Glenn's appeal.

10. Glenn's ownership claims to particular lots included in the estate, the 1976 trailer, and the addition to the 1976 trailer are closely related. The superior court based its decision about the 1976 trailer on its conclusion that Alexina's will was incompatible with Glenn's claim that she sold him the trailer. But Glenn did not claim he and Alexina engaged in one isolated transaction over the course of more than ten years of living together after their divorce. Glenn alleged that his and Alexina's financial

---

[4] *See* Alaska R. App. P. 202(a) ("An appeal may be taken to the supreme court from a final judgment entered by the superior court . . . .").

[5] *See* Alaska R. App. P. 402(a)(1) ("An aggrieved party . . . may petition the appellate court . . . to review any court order or decision that is not appealable under Rule 202 and is not subject to a petition for hearing under Rule 302.").

[6] *See* Alaska R. App. P. 404(a)(1) ("An original application for relief may be filed with the appellate court or a judge or justice thereof in any matter within its jurisdiction, whenever relief is not available from any other court and cannot be obtained through the process of appeal, petition for review, or petition for hearing.").

lives were intertwined such that she repeatedly sold him property over the course of their relationship, at least in part as repayment or compensation for services he provided her, and that they had a joint plan to dispose of certain assets at their deaths. It is impossible to evaluate the sale of the 1976 trailer without evaluating it in the context of this shared history and the other sales that Glenn contends took place. We thus cannot evaluate the superior court's decision regarding the 1976 trailer until the court decides all of Glenn's claims. Because Glenn's claims are properly before the superior court, it must — as Glenn has repeatedly requested — decide them.[7] We thus VACATE the superior court's orders regarding title to the 1976 trailer and REMAND the case for further proceedings not inconsistent with this decision.[8]

11.   We AFFIRM the superior court's decision regarding Glenn and Alexina's property relationship. Glenn brought no claims that depend on his claimed status as Alexina's domestic partner. Glenn's ownership claims are instead based on alleged contracts between him and Alexina. But even if Glenn had brought a separate property claim based on his alleged domestic partnership with Alexina, the superior court's decision was correct. Like marital property interests, domestic partnership property interests do not vest until a relationship ends during the lifetime of the parties.[9]

---

[7]     *See State v. W.P.*, 349 P.3d 181, 185 (Alaska App. 2015) ("[A] court [that] has subject-matter jurisdiction over a particular category of case . . . is *required* to adjudicate all such cases that are properly brought to it." (emphasis in original)); *Ohio v. Wyandotte Chems. Corp.*, 401 U.S. 493, 496-97 (1971) ("[I]t is a time-honored maxim of the Anglo-American common-law tradition that a court possessed of jurisdiction generally must exercise it.").

[8]     Because we remand this case for further proceedings, we decline to decide Glenn's due process claims.

[9]     *See In re Estate of Hatten*, ___ P.3d ___, Op. No. 7359, 2019 WL ___
(continued...)

Glenn consequently gained no interest in Alexina's property during her life by virtue of their alleged domestic partnership. And, because the purported relationship ended with Alexina's death, common law domestic partnership property distribution principles no longer apply and the court was required to apply Alaska's probate code.[10] As the superior court correctly noted, the probate code does not provide for a domestic partner to inherit from an intestate decedent.[11]

12. We do not retain jurisdiction.

---

[9] (...continued) (Alaska April 26, 2019).

[10] *See id.*

[11] *See* AS 13.12.102-.103.